**UNITED STATES of America**

v.

**Jerome K. POST, Jr., Clerk of the Sixth Judicial District Court of Louisiana, etc., et al.**

**Zelma C. WYCHE et al.**

v.

**Jerome K. POST, Jr., Clerk of the Sixth Judicial District Court of Louisiana, etc., et al.**

**Civ. A. Nos. 13571, 13574.**

United States District Court
W. D. Louisiana,
Monroe Division.

March 10, 1969.

Ramsey Clark, Atty. Gen., Stephen J. Pollak, Asst. Atty. Gen., Frank M. Dunbaugh, Atty., Civil Rights Division, Dept. of Justice, Washington, D. C., Edward L. Shaheen, U. S. Atty., Charles E. Welsh, Asst. U. S. Atty., Shreveport, La., for the Government.

Donald Juneau, New Orleans, La., Richard B. Sobol, Robert F. Collins and Nils R. Douglas, New Orleans, La., for plaintiffs Zelma C. Wyche and others.

Jack P. F. Gremillion, Atty. Gen., of Louisiana, Thomas McFerrin, Asst. Atty. Gen., Baton Rouge, La., Robert C. Downing, Asst. Atty. Gen., Monroe, La., Thompson L. Clarke, Dist. Atty., for the

Sixth Judicial District, St. Joseph, La., for all defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

DAWKINS, Chief Judge.

### Findings of Fact

1. These consolidated actions were filed respectively February 23rd, 1968, and February 26th, 1968, under Sections 2, 11(a), and 12(b), of the Voting Rights Act of 1965, and 42 U.S.C. § 1971(a) and (c). The complaints charged defendants with having engaged in certain conduct which had the effect of depriving qualified Negro voters of their right effectively to cast their vote in a February 6, 1968, election for the office of Village Marshal of Tallulah, Louisiana.

2. Defendant Jerome K. Post, Jr., is Clerk of the Court for the Sixth Judicial District of Louisiana. Under Louisiana law, he is ex-officio Parish custodian of voting machines and is responsible for providing instructions to election commissioners in the operation of voting machines and as to their duties in connection therewith.

3. The defendant Board of Supervisors of Elections of Madison Parish is composed of the Madison Parish Registrar of Voters and two other persons appointed by the Governor. The duties of the Board include the giving of notice of every general election, and providing for commissioners and clerks to preside over the election at each polling precinct, and general supervision of elections. Defendant Jack H. Folk is president of the Board of Supervisors. Defendants Myrtis Bishop and J. W. Huckabay are members of the Board of Supervisors.

4. Defendant Wade O. Martin, Jr., is the Secretary of State of the State of Louisiana. As such, he is responsible for the preparation and distribution of the official ballots and sample ballots used in elections in the State of Louisiana, and for preparation of full voting instructions to voters.

5. Defendant Douglas Fowler is the State Custodian of Voting Machines of the State of Louisiana. As such, he is responsible for the preparation of all voting machines used in elections in the State of Louisiana, and the delivery of the machines and other election supplies to the custody of the Parish custodians in complete readiness for use at the polls.

6. Defendant F. M. "Peck" Magee is the Madison Parish Voting Machine mechanic. As agent and employee of defendant Douglas Fowler, he is responsible for preparing and insuring that necessary voting machines in Madison Parish are in complete readiness for use at the polls in elections.

7. August 12, 1966, pursuant to Section 6 of the Voting Rights Act of 1965, the Attorney General certified that the appointment of federal examiners in Madison Parish was necessary to enforce the guarantees of the Fifteenth Amendment to the Constitution of the United States.

8. November 4, 1967, a primary election for Democratic party candidates for State and local offices was held in Madison Parish. A special municipal primary election for Democratic nominee for the office of Village Marshal of Tallulah, Louisiana, was joined with this regular Democratic primary. The general election for all of these offices was scheduled for February 6, 1968. Because the municipal boundaries of Tallulah, Louisiana, do not coincide with the boundaries of Ward 4 of Madison Parish, within which Tallulah is located, in certain of the Ward 4 precincts there were voters who did not reside within the municipal boundaries of Tallulah and, therefore, were ineligible to vote in the special municipal election.

9. In the special primary election, referred to in Paragraph 8 above, Zelma C. Wyche, a Negro resident of Tallulah, Louisiana, was declared the Democratic nominee for the office of Village Marshal. The final voting results for this special primary election were 1907 votes

for Zelma C. Wyche and a combined total of 1883 votes for the two white candidates who had sought the nomination.

10. Clayton W. Cox, a white resident of Tallulah, Louisiana, was named as the Republican nominee to oppose Zelma Wyche for the office of Village Marshal in the February 6, 1968, general election.

11. As of January 6, 1968, there were approximately 2,671 Negroes and 2,111 white persons registered to vote in the Village of Tallulah, Louisiana.

12. Sometime prior to January 19, 1968, the defendant Martin caused to have printed and distributed an official sample ballot for use in Ward 4 of Madison Parish, Louisiana, at the general elections scheduled for February 6, 1968. This sample ballot had printed on its face instructions to the effect that the turning of a party lever would cause votes to be cast as a unit for every nominee of the party who appeared on the ballot. These instructions did not preclude party nominees involved in the special general election for Village Marshal.

13. On or about January 19, 1968, at the courthouse office in Tallulah, Louisiana, Zelma C. Wyche, the Democratic nominee for Village Marshal, requested and was permitted to inspect a sample ballot for use in Ward 4 of Madison Parish during the general elections scheduled for February 6, 1968, which had been distributed to defendant Post as Clerk of Court and ex-officio Parish Custodian of Voting Machines, by defendant Martin, as Secretary of State. Printed on the face of this sample ballot were the same instructions concerning the party lever referred to in Paragraph 12 above.

14. On or about January 23, 1968, in response to a previous request, Zelma C. Wyche, the Democratic nominee for Village Marshal, received from defendant Martin three sample ballots, for use in Ward 4 of Madison Parish during the general elections scheduled for February 6, 1968, on the face of which were print-

ed the same instructions to voters concerning the party lever referred to in Paragraphs 12 and 13 above.

15. Acting upon the information supplied to him that pulling the master Democratic lever would register a vote for *all* Democratic nominees, from about January 23, 1968, to February 6, 1968, Wyche geared his entire campaign strategy to inducing the voters to pull the master Democratic lever. This campaign was primarily directed toward the Negro electorate.

16. Sometime prior to January 24, 1968, defendant Magee received from the Office of the State Custodian of Voting Machines a worksheet which described the manner in which the voting machines were to be set up for the February 6, 1968, general election in Ward 4 of Madison Parish. In effect, the worksheet was a diagram of the official machine ballot.

17. Sometime prior to January 24, 1968, defendant Magee received from the Louisiana Secretary of State's office the official machine ballots that were to be inserted on the face of the voting machines for the February 6, 1968, general election in Ward 4 of Madison Parish.

18. In preparing the machines to be used at the February 6, 1968, general election in Ward 4 of Madison Parish, defendant Magee became aware that because of the limitations of the voting machines, it would not be mechanically possible to attach the individual levers of the nominees for Village Marshal to the Democratic and Republican party levers and at the same time provide mechanically on the same machine for excluding the election for Village Marshal from those voters residing outside the municipal boundaries of Tallulah, Louisiana, but within Ward 4 of Madison Parish and who were, therefore, not eligible to vote in that election.

19. To resolve the above mentioned problem, defendant Magee set up the machines to be used in the February 6, 1968, election in Ward 4 of Madison Parish, in such a manner as to preclude

the straight party ticket lever from affecting the special election for Village Marshal of Tallulah, Louisiana. Thus, while Democratic nominee Wyche's name was immediately beside all the other Democratic party nominees for whom votes could be cast simply by pulling the master party lever, pulling that master lever would not register a vote for Wyche. A vote for Wyche could only be registered by pulling the individual lever over Wyche's name.

20. Defendant Magee further inserted on the machines the initial ballots received from the Secretary of State, together with instructions to voters, which illustrated that the pulling of the party lever would cause votes to be cast as a unit for every nominee of the party who appeared on the ballot.

21. None of the above mentioned actions by defendant Magee were taken for the purpose of influencing the outcome of the election. Rather, he sincerely believed that the voters would realize that since the Village Marshal election was a special election it would not be controlled by the master party levers.

22. Defendant Magee delivered a machine prepared in the manner described above to the Parish custodian of voting machines for use as a demonstration machine at the school for election commissioners.

23. On January 24, 1968, defendant Post conducted a school for the election commissioners who were to serve at the February 6, 1968, general election in Madison Parish. At the school, the commissioners were instructed in the operation of the machines by Jim Trichel, an agent and employee of defendant Fowler.

24. At the school it was at least mentioned that the pulling of the master party levers would not affect the election of the Marshal for the Village of Tallulah, Louisiana. This condition of the machines, however, was not made clear to the persons in attendance.

25. Also on January 24, 1968, the Secretary of State through his agent and administrative assistant, Robert Hughes, was advised of the voting problem in Ward 4 of Madison Parish. Hughes considered several alternative solutions. Primarily because the school for commissioners had already been conducted, Hughes decided that the Marshal's race would be disconnected from the straight party lever on all machines to be used in Ward 4, thereby requiring that eligible voters desiring to vote for the office of Village Marshal must turn the individual candidate's lever in order to cast a vote for that office.

26. Subsequent to making his above mentioned decision, the Secretary of State printed a new sample ballot for use at the February 6, 1968, general election in Ward 4 of Madison Parish. This sample ballot had printed on its face new instructions concerning the use of the party lever, including a statement that the use of such a lever would not cast a vote in the special election for Village Marshal.

27. On or about January 26, 1968, defendant Martin, as Secretary of State, had copies of the revised sample ballot mailed and otherwise delivered to various persons in Madison Parish including the defendant Post, but did not mail or otherwise distribute such revised sample ballots to candidates for the office of Village Marshal.

28. Defendant Post posted a revised sample ballot in the office of the Clerk of Court, Madison Parish.

29. Defendant Fowler, as State Custodian of Voting Machines, and defendant Magee, as Madison Parish Voting Machine mechanic, caused to be delivered to the custody of the defendant Post, in his official capacity as ex-officio Parish Custodian of Voting Machines, improperly prepared voting machines for use in Ward 4 of Madison Parish, in that such machines had inserted on their faces instructions to the effect that the turning of the party lever would cause votes to be cast as a unit for every nominee of the party who appeared on the ballot. No instructions

were inserted on the machines to indicate the necessity of individually casting votes in the special election for Village Marshal.

*30.* Defendant Post, as ex-officio Parish Custodian of Voting Machines, failed adequately to advise and instruct the election commissioners, at any time prior to the opening of the polling places and the commencement of voting on February 6, 1968, that the turning of the party lever on the voting machines in Ward 4 would not cast a vote in the special election for Village Marshal and that eligible voters who desired to vote in the special election would have to turn the individual candidate's lever.

*31.* This action by defendant Post was not in bad faith. He and all other defendants at all times acted in good faith, never intending to deprive Negroes of their constitutional or statutory right to vote.

*32.* The Democratic nomineé, Zelma C. Wyche, received no information from any source prior to the opening of the polling places and the commencement of voting on February 6, 1968, that the turning of the Democratic party lever on the voting machines in Ward 4 would not cast a vote in the special election for Village Marshal and that eligible voters who desired to vote in the special election would have to turn the individual candidate's lever. Consequently, he first learned of this condition during the early part of election day, February 6, 1968.

*33.* Until they were instructed to do so by election officials after voting had commenced on February 6, 1968, a substantial number of election commissioners did not advise or inform the voters in Ward 4 that the turning of the party lever on the voting machines would not cast a vote in the special election for Village Marshal and that eligible voters who desired to vote in the special election would have to turn the individual candidate's lever.

*34.* An unknown number of Negro voters in Tallulah, Louisiana, sought to vote in the special election for Village Marshal on February 6, 1968, by turning the Democratic party lever but did not cast effective votes in the special election because they were not informed of the necessity of turning the individual candidate's lever.

### Conclusions of Law

*1.* This Court has jurisdiction of these actions under Section 12(f) of the Voting Rights Act of 1965, 42 U.S.C. § 1971(d) and 28 U.S.C. § 1345.

*2.* The Attorney General of the United States is authorized to institute action on behalf of the United States pursuant to Section 12(d) of the Voting Rights Act of 1965 [42 U.S.C. § 1973j(d)] and 42 U.S.C. § 1971(c).

*3.* Section 2 of the Voting Rights Act of 1965 prohibits imposition of any practice or procedure which has the effect of denying or abridging the right of any citizen of the United States to vote on account of race or color.

*4.* Section 11(a) of the Voting Rights Act of 1965 prohibits public officials from denying any qualified person the right to vote or from willfully failing or refusing to tabulate, count, and report such person's vote.

*5.* 42 U.S.C. § 1971(a) forbids any distinctions in the voting process, including the casting of a ballot, based upon race or color.

*6.* Defendant Post, as ex-officio Parish Custodian of Voting Machines, defendant Martin, as Secretary of State, defendant Fowler, as State Custodian of Voting Machines, and defendant Magee, as Madison Parish Voting Machine mechanic and an agent and employee of defendant Fowler, had a duty under the Fifteenth Amendment to the Constitution of the United States and under Sections 2 and 11(a) of the Voting Rights Act of 1965 and 42 U.S.C. § 1971(a) not to engage in any discriminatory acts or practices based upon race or color in the administration of Louisiana's Election laws. This duty includes the duty to refrain from engaging in conduct which

involves or results in any distinction based upon race, and to refrain from applying any voting procedure which will have the effect of denying to Negro voters the right to cast effective votes for the candidate of their choice.

■ 7. Where, as was done here, public officials, engaged in performing the duties of their offices, cause to be disseminated instructions to voters as to the manner of casting votes in a general election and, then, even though in good faith, without adequate notice to the voters, institute a new voting procedure contrary to the instructions previously disseminated, and a substantial number of Negro voters are induced to vote according to such erroneous instructions and are thereby prevented from casting effective votes, we conclude that Negroes have been discriminated against in the administration of the voting process in violation of the Fifteenth Amendment and of Sections 2 and 11(a) of the Voting Rights Act of 1965 and 42 U.S.C. § 1971(a).

## ORDER AND DECREE

Pursuant to the Findings of Fact and Conclusions of Law entered this date, it is ordered, adjudged, and decreed that:

1. The February 6, 1968, special general election for the office of Village Marshal of Tallulah, Louisiana, is null, void, and of no effect.

2. The defendants Jerome K. Post, Jr., Clerk of the Sixth Judicial District Court of Louisiana and ex-officio Parish Custodian of Voting Machines; Wade O. Martin, Jr., Secretary of State of the State of Louisiana; Douglas Fowler, State Custodian of Voting Machines of the State of Louisiana, and F. M. "Peck" Magee, Madison Parish Voting Machine mechanic, together with their agents, officers, employees, and successors, shall administer the voting process in compliance with the applicable Louisiana and Federal law in such a manner that will afford equal opportunities to vote to all qualified voters regardless of race or color.

3. Defendants are specifically enjoined from engaging in the practices which were found to be discriminatory in the February 6, 1968, election and any other practices and procedures which may be discriminatory in fact.

4. It is further ORDERED, ADJUDGED, and DECREED that the defendants Jack H. Folk, president and member of the Madison Parish Board of Supervisors of Elections; J. W. Huckabay, member of the Madison Parish Board of Supervisors of Elections; Myrtis Bishop, member of the Madison Parish Board of Supervisors of Elections, and such other persons as are required by law to act, shall within ninety days from the date of this order call and conduct another general election for the office of Village Marshal of Tallulah, Louisiana, as is prescribed by law, between Zelma C. Wyche, as Democratic nominee, and Clayton W. Cox, as Republican nominee.

It is further ORDERED that the United States Marshal or Deputy Marshal for this District serve a true copy of this decree upon each of the named defendants enjoined by this decree.

This Court retains jurisdiction of this cause for the purpose of issuing any and all additional orders herein that may in its judgment become necessary or appropriate for the purpose of modifying or enforcing this decree.

The legally taxable costs incurred in this proceeding are hereby assessed against the defendants herein enjoined.